UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SAMUEL DIAZ,            Plaintiff, | : : : |
| v. | : :  C.A. No. 21-CV-241-JJM-PAS |
| PATRICIA A. COYNE-FAGUE, et al.,            Defendants. | : : : |

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Now pending before the Court is the fourth motion for the appointment of counsel filed by *pro se*[1] prisoner Plaintiff Samuel Diaz. ECF No. 128. For the reasons set out below, the motion is denied without prejudice.

I.      PROCEDURAL, FACTUAL AND LEGAL BACKGROUND

This case was initially filed in 2017. Two discrete claims survived screening: first, Plaintiff's allegation that he was inappropriately placed in restrictive housing for extended periods of time despite his mental health and cognitive deficiencies; and, second, Plaintiff's claim of malicious and excessive use of force based on a single incident on November 23, 2016, during which staff of Rhode Island Department of Corrections ("RIDOC") sprayed him with "OC,"[2] and returned him to an inadequately cleaned cell with no mattress and no water. The latter claim (hereinafter, the "OC Claim") is brought pursuant to 42 U.S.C. § 1983 based on Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. ECF No. 58.

---

[1] The filings of *pro se* litigants must be read with appropriate leniency. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Silva v. Farrell, C.A. No. 18-650JJM, 2019 WL 2501887, at *1 n.1 (D.R.I. Jan. 15, 2019), adopted, 2019 WL 2500668 (D.R.I. Jan. 30, 2019).

[2] "OC" is oleoresin capsicum ("pepper spray"). Underwood v. Barrett, 924 F.3d 19, 20 (1st Cir. 2019).

Plaintiff's first motion for counsel was denied in 2017. ECF No. 22. As to the OC Claim, the Court found it to be "relatively straightforward," as well as that, on release (then imminent), Plaintiff could present it to "lawyers in the community who can . . . make a judgment whether to accept the engagement, mindful that a meritorious claim under 42 U.S.C. § 1983 provides for the recovery of reasonable attorney's fees." ECF No. 22 at 4. In 2018, the Court took up Plaintiff's second motion for counsel and, based on careful consideration, granted it in limited part, by appointing counsel pursuant to the Court's *pro bono* plan solely to represent Plaintiff with respect to liability (not damages) arising from his clam of excessive placement in restrictive housing.[3] ECF No. 47 at 3. As to the OC Claim, the Court denied the motion for counsel without prejudice, finding that, "those matters lack a similar degree of complexity; accordingly, it is not fundamentally unfair for Plaintiff to continue to represent himself on those issues." Id. In 2019, an attorney entered his appearance to represent Plaintiff in connection with his OC Claim. ECF No. 85. However, in May 2021, Plaintiff asked the Court to discharge this attorney and allow him to proceed on the OC Claim *pro se*. ECF Nos. 90-98. On June 2, 2021, the Court held a hearing on this motion during which Plaintiff appeared and advocated for himself regarding the OC Claim; his appointed attorneys also participated. After Plaintiff persuasively advised the Court that he wanted to and could represent himself on the OC Claim and that he wanted it decoupled from the unrelated restrictive housing claim so that it could proceed independently, the Court issued a series of Text Orders separating the two claims and ruling that "Plaintiff shall proceed *pro se* as to [the OC Claim] only." Text Orders of June 2 & 4,

---

[3] The Court observes that these attorneys have ably, aggressively, effectively, and competently represented Plaintiff on this limited basis continuously since they were appointed to the present. At least once at the Court's request, as well as at other times, they have stepped up to assist Plaintiff in connection with matters outside the scope of their appointment relating only to the OC Claim. E.g., Text Order of Dec. 21, 2018.

2021.  The OC Claim became Civil Action 21-241 (this case), and Plaintiff entered his appearance as a *pro se* litigant; the Court promptly conducted a Rule 16 conference and (at Plaintiff's request) referred the case for court-annexed mediation.  ECF Nos. 101, 102.

Plaintiff's self-proclaimed desire to be *pro se* did not last long.  His third motion for counsel was filed on September 9, 2021.  ECF No. 114.  In response, the Court held that the OC Claim "does not present extraordinary circumstances sufficient to merit appointment of counsel from the Court's *pro bono* panel, despite Plaintiffs limited capacity to prosecute the claim as established in his filing of [Neuropsychological Consultation Report] ECF No. 116 (sealed)."  Text Order of Sept. 13, 2021.  The Court also noted that this determination could be subject to change as the case proceeded, including to the extent that Plaintiff might be able to establish that the OC Claim has substantive merit too complex for Plaintiff to present it without the assistance of an attorney.  Id.

Since that ruling, Plaintiff has filed (on October 6, 2021) his fourth motion for counsel at the same time that he has bombarded the Court with documents related to the merit of the OC Claim.  These reveal that the OC Claim arises from an incident that was triggered by Plaintiff violently and loudly kicking the door of his cell, so loudly that it disrupted the ability of RIDOC staff to respond to the needs of other inmates.  ECF No. 121 at 1, 3; ECF No. 121-1 at 2.  When RIDOC tried to address this conduct, Plaintiff used his mattress to block visual access and prevent the use of OC.  ECF No. 121 at 1, 3.  After Plaintiff was sprayed with OC, he was allowed to shower and received medical attention.  Id. at 1, 12, 17-19, 25.  As discipline, Plaintiff was deprived of the mattress for two days and alleges that the sink water[4] in his cell was turned

---

[4] RIDOC records reflect that the turn-off of the sink water was a two-day consequence triggered by Plaintiff pouring water into the air vents in his cell; Plaintiff makes no mention of pouring water in the air vents and claims the sink water was off for six days.  ECF No. 58 ¶¶ 3, 67; ECF No. 121 at 23

off for six days.  ECF No. 58 ¶¶ 3, 61, 63, 65-67.  Plaintiff also claims that RIDOC did not effectively clean the OC residue in the cell, so that he continued to be exposed to it after he was returned to the cell and was forced to try to clean it using toilet water.  Id. ¶¶ 63, 65.  This aspect of the claim appears to be undisputed based on the findings in RIDOC's investigation of the incident.  ECF No. 121 at 25-26.  RIDOC's report concludes there was confusion about whether the porter had completed the decontamination procedure and that the cell had not been properly decontaminated when Plaintiff was returned to it.  Id.  The report finds that the conduct of RIDOC staff in returning Plaintiff to a partially decontaminated cell was "not intentional nor deliberate," but it also states that the staff in question were disciplined to the extent that they were "told that in the future ensure that this doesn't repeat itself."  Id. at 26.  Plaintiff has not alleged nor presented any evidence of a serious or sustained injury arising from the incident.

Because Plaintiff's OC Claim is based on the Eighth Amendment, the issue in this case is not whether RIDOC staff were negligent in how they handled this incident.  Rather, Plaintiff must persuade a fact finder that he was subject to "cruel and unusual punishment in violation of the Eighth Amendment," focusing on RIDOC's subjective motive for their conduct, as well as on the conduct's objective effect.  Wright v. Goord, 554 F.3d 255, 268 (2d Cir. 2009) (citing Hudson v. McMillian, 503 U.S. 1, 7-8 (1992)).  "To prevail on the objective prong, [an inmate] must show that the alleged wrongdoing was objectively harmful enough to establish a constitutional violation."  Staples v. Gerry, 923 F.3d 7, 13 (1st Cir. 2019) (internal quotation marks omitted).  The absence of evidence of injury in this case is pertinent to whether the case has merit.  See Baldwin v. Tessier, No. CIV.A. 05-10898-DPW, 2006 WL 753244, at *8 (D. Mass. Mar. 22, 2006) (extent of injury suffered by inmate one factor that may suggest use of force in particular situation was excessive; absence of serious injury is relevant to Eighth

4

Amendment inquiry). "The subjective prong turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Staples, 923 F.3d at 13 (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). Plaintiff's burden will be to show that the conduct of RIDOC staff was not a good faith response to what Plaintiff appears to concede was inappropriate behavior, but rather was malicious and sadistic to inflict harm.

Turning to Plaintiff's capacity to self-represent or to find an attorney on his own, Plaintiff has buttressed his motion for counsel with his claim that he is cognitively limited as reflected in a Neuropsychological Consultation Report (sealed) that he filed. This report confirms that, in the past, Plaintiff has been diagnosed as cognitively impaired; in the present, the examiner assessed "moderate" deficits, subject to the likelihood that the testing results understate Plaintiff's true cognitive abilities in light of "poor performance on one measure of effort and performance validity." ECF No. 116 (sealed). Nevertheless, in his aggressive prosecution of this case, Plaintiff has demonstrated effectiveness in his ability to represent himself. He has assembled evidence through effective use of discovery. While his filings are at times difficult to discern, he has succeeded in getting himself understood. In addition, Plaintiff has demonstrated familiarity with the Court's procedures, to the extent of filing at least nine civil actions (including this one) in the past two years. See Benbow v. Wall, No. CA 13-700-ML, 2014 WL 940169, at *3 (D.R.I. Mar. 11, 2014) (motion for counsel denied because plaintiff demonstrated effectiveness in his ability to represent himself, including filing multiple lawsuits). Further, while Plaintiff himself is incarcerated, his recent filings in this case and others reveal that he has a close family member who is actively assisting him in connection with his litigation efforts. Therefore, despite being incarcerated, he is not without the ability to seek out "lawyers in the community who can . . .

make a judgment whether to accept the engagement, mindful that a meritorious claim under 42 U.S.C. § 1983 provides for the recovery of reasonable attorney's fees." ECF No. 22 at 3-4.

## II.  APPLICABLE LAW AND ANALYSIS

In stark contrast to criminal proceedings, there is no constitutional right to free counsel in a civil case. DesRosiers v. Moran, 949 F.2d 15, 23 (1st Cir. 1991); see Maroni v. Pemi-Baker Reg'l Sch. Dist., 346 F.3d 247, 257 (1st Cir. 2003); King v. Greenblatt, 149 F.3d 9, 14 (1st Cir. 1998); Barkmeyer v. Wall, C.A. No. 09-430S, 2009 WL 3046326, at *1 (D.R.I. Sept. 22, 2009). Further, there is no funding mechanism for appointed counsel in civil cases; therefore, whether to appoint is subject to the district court's broad discretion, to be exercised in light of the difficulties in rationing the precious resource of volunteer lawyer services. Sai v. Transp. Sec. Admin., 843 F.3d 33, 35 (1st Cir. 2016). "To qualify for this scarce resource, a party must be indigent and exceptional circumstances must exist such that the denial of counsel will result in fundamental unfairness impinging on the party's due process rights." Choksi v. Trivedi, 248 F. Supp. 3d 324, 328 (D. Mass. 2017) (citing DesRosiers, 949 F.2d at 23); see Cookish v. Cunningham, 787 F.2d 1, 2 (1st Cir. 1986) ("an indigent litigant must demonstrate exceptional circumstances in his or her case to justify the appointment of counsel").

To determine whether there are exceptional circumstances sufficient to warrant the appointment of counsel from the Court's *pro bono* panel, "a court must examine the total situation, focusing, *inter alia*, on the merits of the case, the complexity of the legal issues, and the litigant's ability to represent himself." DesRosiers, 949 F.2d at 24. Just because a plaintiff alleges sufficient facts to state a claim in the complaint, that does not in and of itself require the appointment of counsel. Cookish, 787 F.2d at 2-3; Childs v. Duckworth, 705 F.2d 915, 922 (7th Cir. 1983). Consistent with this principle, a motion for counsel may be denied, for example,

when the claim is based on a straightforward single incident that did not result in serious injury. Hanson v. Rhode Island Dep't of Corr., No. CV 17-598WES, 2019 WL 6324653, at *2-3 (D.R.I. Nov. 25, 2019). The Court also may consider the claimant's ability to find his own attorney. See Albanese v. Blanchette, No. CV 20-00345-WES, 2021 WL 5111862, at *1 (D.R.I. Nov. 3, 2021) (denying motion for counsel and cautioning that plaintiff must advise court of efforts to search for private counsel if motion for counsel is renewed).

Based on the foregoing, and as of this writing, the Court finds that Plaintiff has demonstrated an adequate capacity for self-representation. Regarding his ability to find an attorney on his own, the Court finds that Plaintiff already enjoys the benefit of the Court's scarce resource – appointed attorneys from the *pro bono* panel; that he was able to engage an attorney to represent him on the OC Claim, but made the decision to discharge that attorney, choosing deliberately to be *pro se*; and that he has access to family in the community able to seek an attorney willing to accept this case, which (if meritorious) should present an attractive engagement because it carries the right to recover attorney's fees. Regarding complexity, the Court finds that that the factual and legal matters at issue in this case arise from a single incident and are not at all complex, but are simple and straightforward, particularly now that the facts are well developed through discovery. Most importantly, regarding the merits, the Court finds that the OC Claim is not so clearly meritorious as to result in fundamental unfairness if the counsel motion is denied. In reliance on these findings, the Court concludes that Plaintiff has failed to demonstrate the existence of exceptional circumstances sufficient to convince the Court that it should appoint *pro bono* counsel for him in this case at this time.

**III.   CONCLUSION**

Based on the foregoing, Plaintiff's motion for counsel (ECF No. 128) is denied without prejudice.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
November 19, 2021